24CA1700 Peo in Interest of MR 12-12-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1700
Pueblo County District Court No. 22MH124
Honorable Timothy O'Shea, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of

M.R.,

Respondent-Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE BERNARD*
Dunn and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 12, 2024

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    M.R., whom we shall call "the patient," appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo, which we shall call "the hospital," to medicate her involuntarily.  We affirm.

## I.    Background

¶ 2    The patient was originally committed to the hospital in 2021 after a judge found that she was incompetent to proceed in a criminal case.  In 2022, the judge dismissed the criminal charges against the patient because the hospital's staff could not restore her competency.  But the judge ruled that she would remain at the hospital under a civil certification to be treated for her mental illness.

¶ 3    Since then, the court in this case has, on numerous occasions, authorized the hospital to administer medication to the patient involuntarily.  (We note that the patient, on occasion, consented to receive her medications.)

¶ 4    The most recent of those orders, which is the subject of this appeal, was issued on September 23, 2024.  That order granted the government's request to administer the following medications

1

involuntarily to the patient: (1) the anti-psychotic medications clozapine and Zyprexa; (2) the mood stabilizing medications Depakote and lithium; and (3) the anti-seizure and anti-anxiety medication clonazepam.

¶ 5    At the hearing on this motion, the patient's hospital psychiatrist, who testified as an expert in clinical psychiatry, said that the patient's diagnosis is schizoaffective disorder, bipolar type. When not taking her medication, her symptoms include (1) auditory hallucinations; and (2) manic and psychotic behavior, including unprovoked assaults on the hospital's staff and patients and running around naked.  The psychiatrist testified that, based on the patient's 118 assaults at the hospital over the past three years, she is one of the most assaultive patients he has encountered there.

¶ 6    The psychiatrist added that he had prescribed different combinations of medications for the patient since her original admission in 2021.  He explained that her current medications, which we have listed above, had proven to be the most effective combination for treating her condition.  Specifically, he thought that the combination of clozapine, Zyprexa, Depakote, and lithium has been effective in treating the symptoms caused by her condition,

while the clonazepam had stopped seizures from occurring. He explained that, if this combination of medications continued to be effective, and if the patient did not commit any assaults for three months, then the hospital could finally place her in a supervised community setting.

¶ 7 The patient testified during the hearing. She said that, of the five medications, the one that she was unwilling to take was Depakote because it made her very nauseous.

¶ 8 But the psychiatrist told the court that he did not have confidence in the patient's assertion that she would take the four medications in addition to the Depakote because she had, at times, previously refused to take them. And, when the patient was given Depakote in pill form, she would often not swallow it; rather, she would hide it in one of her cheeks.

¶ 9 The court found that the psychiatrist was credible and persuasive, adding that it was convinced by the psychiatrist's opinions. It then applied each of the four elements of the governing test from *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985). It concluded that all four of them had been met, leading it to enter the order that is the subject of this appeal.

## II. Applicable Law and Standard of Review

¶ 10     A court may authorize the involuntary administration of medication if the government demonstrates by clear and convincing evidence that (1) a person is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the person's mental health condition or to prevent the likelihood of the patient causing serious harm to herself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the person's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the person in refusing treatment.  *Id.*

¶ 11     Application of the *Medina* test involves mixed questions of fact and law.  *People v. Marquardt*, 2016 CO 4, ¶ 8.  We defer to the court's factual findings if they have support in the record, and we review the court's legal conclusions de novo.  *Id.*  Resolving conflicts in testimony and determining the credibility of the witnesses are solely within the province of the court as the finder of fact.  *People in Interest of Ramsey*, 2023 COA 95, ¶ 23.

¶ 12     We must determine whether the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient

to support the court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. The testimony of the physician seeking to administer treatment may be sufficient, without more, to satisfy the *Medina* test. *Id.* at ¶ 30.

### III.  Analysis

¶ 13    The patient does not contest the court's rulings that the first, second, and third *Medina* elements were satisfied. Instead, she only challenges the sufficiency of the evidence supporting the court's ruling that the fourth *Medina* element was met. Specifically, she contends that her need for treatment is not sufficiently compelling to override any bona fide and legitimate interest she has in refusing treatment.

¶ 14    The patient submits that the court's ruling severely minimized the significance of the side effects she experiences from taking the medications. She adds that, given the court's minimization of her side effects, it could not properly conduct the balancing test required by the fourth *Medina* element.

¶ 15    Concerning the patient's nausea, she and the psychiatrist agreed that Depakote likely caused it. The psychiatrist also testified that, if the patient would willingly take Depakote in pill

form rather than presumably via injection, her nausea would be reduced or eliminated. But, because the patient often would not swallow the Depakote pills, hiding them in her cheek, the hospital's staff had been forced to administer the Depakote in the alternative form, which causes more nausea. As a result, it appears that the patient has control over limiting or eliminating the nausea caused by Depakote by agreeing to swallow the pills.

¶ 16     The patient also points out that the combination of medications had previously caused seizures.

¶ 17     But the psychiatrist said that the patient's most recent seizure occurred in June 2024 *before* he had prescribed the antiseizure medication clonazepam, which has effectively prevented more seizures from occurring. The psychiatrist also explained that, in addition to prescribing clonazepam, he has reduced the risk of seizures by moderating the patient's dosage of clozapine and lithium. So the risk of seizures seems less likely based on the combination of the five medications at their present dosage.

¶ 18     Even if we assume that the court did not sufficiently credit the patient's interest in not taking the medications, the court nevertheless concluded that "*even if her reasons were bona fide and*

*legitimate*, it's clear that her prognosis is so unfavorable without the medication" that her interest in not taking the medications "has to yield to the [government's] legitimate interest in protecting the safety of those in the institution, and preserving her life and health." (Emphasis added.) That conclusion is well supported by the evidence showing that (1) this combination of medications has been effective in treating the patient's severe symptoms; (2) when she stops taking Depakote, "she goes [on] a binge of assaults"; (3) her nausea would be reduced or eliminated if she took (and actually swallowed) Depakote in pill form; and (4) her seizures stopped once the psychiatrist added clonazepam and moderated the dosages of clozapine and lithium.

¶ 19    We therefore conclude that the record supports the court's determination that the fourth *Medina* element was met.

¶ 20    The order is affirmed.

JUDGE DUNN and JUDGE GOMEZ concur.